No. 10-3964

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

_____

GEORGE H. RYAN SR.,

*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

_____

On remand from the United States Supreme Court, No. 11-499

_____

**RYAN'S PETITION FOR REHEARING WITH SUGGESTION OF
REHEARING *EN BANC***

_____

DAN K. WEBB
JAMES R. THOMPSON, JR.
MATTHEW R. CARTER
KARL A. LEONARD
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

GENE C. SCHAERR
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
(202) 282-5845

ALBERT W. ALSCHULER
220 Tuttle Road
Cumberland, Maine 04021
(207) 829-3963
a-alschuler@law.northwestern.edu

ANDREA D. LYON
DePaul University College of Law, Legal
Clinic
1 E. Jackson Blvd.
Chicago, Illinois 60604
(312) 362-8402
alyon1@depaul.edu

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: **10-3964**

Short Caption: **George H. Ryan Sr. v. United States of America**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):
**George H. Ryan**

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
**Winston & Strawn LLP**

(3) If the party or amicus is a corporation:

    i) Identify all its parent corporations, if any; and
    **N/A**

    ii) List any publicly held company that owns 10% or more of the party's or amicus' stock:
    **N/A**

Attorney's Signature: **s/ Albert W. Alschuler**     Date: **September 7, 2012**

Attorney's Printed Name: **Albert W. Alschuler (Counsel of Record)**
Address: **220 Tuttle Road**
**Cumberland, Maine 04021**

Phone Number: **(207) 829-3963**
Fax Number: **(312) 558-5700**
E-Mail Address: **a-alschuler@law.northwestern.edu**

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: **10-3964**

Short Caption: **George H. Ryan Sr. v. United States of America**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):
        **George H. Ryan**

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
        **Winston & Strawn LLP**

(3)     If the party or amicus is a corporation:

        i)      Identify all its parent corporations, if any; and
                **N/A**

        ii)     List any publicly held company that owns 10% or more of the party's or amicus' stock:
                **N/A**

Attorney's Signature: **s/ Andrea D. Lyon**          Date:    **September 7, 2012**

Attorney's Printed Name:    **Andrea D. Lyon**
Address:        **Depaul University College of Law, Legal Clinic**
                **1 East Jackson Blvd.**
                **Chicago, IL  60604**

Phone Number:           **(312) 362-8402**
Fax Number:             **(312) 362-6918**
E-Mail Address:         **alyon1@depaul.edu**

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: **10-3964**

Short Caption: **George H. Ryan Sr. v. United States of America**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):
 **George H. Ryan**

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
**Winston & Strawn LLP**

(3)     If the party or amicus is a corporation:

i)     Identify all its parent corporations, if any; and
**N/A**

ii)     List any publicly held company that owns 10% or more of the party's or amicus' stock:
**N/A**

Attorney's Signature:  **s/ Dan K. Webb**          Date:   **September 7, 2012**

Attorney's Printed Name:   **Dan K. Webb**
Address:          **Winston & Strawn LLP**
               **35 West Wacker Drive**
               **Chicago, IL  60601**

Phone Number:        **(312) 558-5600**
Fax Number:          **(312) 558-5700**
E-Mail Address:         **dwebb@winston.com**

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: **10-3964**

Short Caption: **George H. Ryan Sr. v. United States of America**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):
**George H. Ryan**

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
**Winston & Strawn LLP**

(3)     If the party or amicus is a corporation:

i)      Identify all its parent corporations, if any; and
**N/A**

ii)     List any publicly held company that owns 10% or more of the party's or amicus' stock:
**N/A**

Attorney's Signature:  **s/ James R. Thompson**          Date:    **September 7, 2012**

Attorney's Printed Name:    **James R. Thompson**
Address:              **Winston & Strawn LLP**
                        **35 West Wacker Drive**
                        **Chicago, IL  60601**

Phone Number:            **(312) 558-5600**
Fax Number:              **(312) 558-5700**
E-Mail Address:          **jthompson@winston.com**

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: **10-3964**

Short Caption: **George H. Ryan Sr. v. United States of America**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):
  **George H. Ryan**

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
**Winston & Strawn LLP**

(3)    If the party or amicus is a corporation:

      i)    Identify all its parent corporations, if any; and
          **N/A**

      ii)    List any publicly held company that owns 10% or more of the party's or amicus' stock:
          **N/A**

Attorney's Signature: **s/ Gene C. Schaerr**    Date: **September 7, 2012**

Attorney's Printed Name: **Gene C. Schaerr**
Address: **Winston & Strawn LLP**
               **1700 K Street, N.W.**
               **Washington, D.C. 20006-3817**

Phone Number: **(202) 282-5000**
Fax Number: **(202) 282-5100**
E-Mail Address: **GSchaerr@winston.com**

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: **10-3964**

Short Caption: **George H. Ryan Sr. v. United States of America**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):
   **George H. Ryan**

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
   **Winston & Strawn LLP**

(3) If the party or amicus is a corporation:

   i) Identify all its parent corporations, if any; and
   **N/A**

   ii) List any publicly held company that owns 10% or more of the party's or amicus' stock:
   **N/A**

Attorney's Signature: **s/ Matthew R. Carter**          Date: **September 7, 2012**

Attorney's Printed Name: **Matthew R. Carter**
Address:          **Winston & Strawn LLP**
                  **35 West Wacker Drive**
                  **Chicago, IL  60601**

Phone Number:          **(312) 558-5600**
Fax Number:            **(312) 558-5700**
E-Mail Address:        **mcarter@winston.com**

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: **10-3964**

Short Caption: **George H. Ryan Sr. v. United States of America**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):
       **George H. Ryan**

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
       **Winston & Strawn LLP**

(3)    If the party or amicus is a corporation:

      i)      Identify all its parent corporations, if any; and
               **N/A**

      ii)     List any publicly held company that owns 10% or more of the party's or amicus' stock:
               **N/A**

Attorney's Signature: **s/ Karl A. Leonard**          Date: **September 7, 2012**

Attorney's Printed Name: **Karl A. Leonard**
Address:                 **Winston & Strawn LLP**
                         **35 West Wacker Drive**
                         **Chicago, IL  60601**

Phone Number:            **(312) 558-5600**
Fax Number:              **(312) 558-5700**
E-Mail Address:          **kaleonard@winston.com**

## TABLE OF CONTENTS

**Page(s)**

I.      REQUIRED STATEMENT FOR SUGGESTION OF REHEARING ...............................1

II.     REQUEST FOR PANEL REHEARING...............................................................................2

     A.      The Panel's Refusal to Address All Disputed Convictions .....................................2

     B.      Material Misstatements of the Record ....................................................................5

III.    REQUEST FOR REHEARING *EN BANC* ........................................................................9

CONCLUSION.....................................................................................................................12

ADDENDUM
Panel Decision *George H. Ryan, Sr. v. United States*  (7th Cir. Aug. 6, 2012)

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Borre v. United States,*
    940 F.2d 215 (7th Cir. 1991) ...................................................................3

*Evans v. United States,*
    504 U.S. 255 (1992)...........................................................................11

*Kusay v. United States,*
    62 F.3d 192 (7th Cir. 1995) ...................................................................3

*McCormick v. United States,*
    500 U.S. 257 (1991)...........................................................................11

*Ryan v. United States,*
    132 S. Ct. 2099 (2012)........................................................................1

*Ryan v. United States,*
    645 F.3d 913 (7th Cir. 2011) ..............................................................1, 6

*Ryan v. United States,*
    Case No. 10-3964 (7th Cir. July 19, 2011) ...............................................6

*Skilling v. United States,*
    130 S. Ct. 2896 (2010)................................................................ passim

*Steffes v. Pollard,*
    663 F.3d 276 (7th Cir. 2011) ...................................................................3

*Sun-Diamond Growers v. United States,*
    526 U.S. 398 (1999).............................................................................2

*United States v. Ganim,*
    510 F.3d 134 (2d Cir. 2007)................................................................1, 11

*United States v. Kemp,*
    500 F.3d 257 (3d Cir. 2007)................................................................1, 11

*United States v. Smith,*
    103 F.3d 531 (7th Cir. 1996) ...................................................................3

*United States v. Warner,*
    498 F.3d 666 (7th Cir. 2007) .................................................................13

*United States v. Warner,*
    506 F.3d 517 (7th Cir. 2007) ..............................................................13, 14

*United States v. Whitfield*,
  590 F.3d 325 (5th Cir. 2009) ..............................................................................11

*Wood v. Milyard*,
  132 S. Ct. 1826 (2012) ....................................................................................1, 6

**STATUTES**

18 U.S.C. § 201(b) ..............................................................................................11

18 U.S.C. § 666(a)(2)...........................................................................................11

18 U.S.C. § 1346..................................................................................................1

28 U.S.C. § 2255...............................................................................................1, 3

## I.     REQUIRED STATEMENT FOR SUGGESTION OF REHEARING *EN BANC*

*Skilling v. United States*, 130 S. Ct. 2896 (2010), holds that the "honest services" statute, 18 U.S.C. § 1346, "covers only bribery and kickback schemes." 130 S. Ct. at 2907. This statute does not criminalize undisclosed conflicts of interest. *Id.* at 2933-34. In this § 2255 proceeding, the panel acknowledged that instructions directing conviction for failing to disclose a conflict of interest were erroneous, but it held the error harmless. It did so on grounds that conflict with *Skilling* and with the circuit decisions that *Skilling* cited to explain its standard. *See* 130 S. Ct. at 2934.[1]

In one of these decisions, the Second Circuit held that, to establish bribery on a "stream of benefits" theory, the government must show that a "payment [was] made in exchange for a *commitment* to perform official acts to benefit the payer in the future." *United States v. Ganim*, 510 F.3d 134, 147 (2d Cir. 2007) (emphasis in the original). In another, the Third Circuit held that stream of benefits bribery occurs only when "the parties intended for the benefit to be made in exchange for some official action." *United States v. Kemp*, 500 F.3d 257, 282 (3d Cir. 2007). These formulations focus on the parties' intent at the time an alleged bribe giver supplied one or more benefits to an official.

The panel, however, found the district court's instructional errors harmless because, in its view, "the jury could only have convicted [Ryan] . . . if it believed that his conduct was a *response* to the stream of benefits." Slip. op. 13 (quoting the district court with approval)

---

[1] The panel's initial opinion in this case did not address harmless error, the principal issue briefed by the parties. Instead, it made three rulings neither party had sought: (1) that, although Ryan objected repeatedly to the conflict of interest instruction, he did not make the proper objection; (2) that the Court could disregard the government's express acknowledgment that Ryan did make the appropriate objection; and (3) that directing conviction for noncriminal conduct is not a constitutional error and is not cognizable in § 2255 proceedings. *Ryan v. United States*, 645 F.3d 913 (7th Cir. 2011). The panel addressed harmless error only after the Supreme Court vacated its decision and remanded the case for reconsideration in light of *Wood v. Milyard*, 132 S. Ct. 1826 (2012). *See Ryan v. United States*, 132 S. Ct. 2099 (2012).

(emphasis added). It focused, not on the time when an official accepted benefits, but on the time when he took action that aided their donor. The panel thus departed from the Supreme Court's bribery standard[2] in favor of a "one hand washes the other" or "favoritism" standard. This standard invites the prosecution of every official who exhibits partiality toward a friend, supporter, or benefactor. It conflicts with the court of appeals' decisions cited in *Skilling* and with *Skilling* itself.

The panel declined to review four of Ryan's seven mail fraud convictions, believing erroneously that he had served his sentences for these convictions. Before turning to the panel's concept of bribery, Ryan asks the panel to reconsider its failure to address these convictions. He also asks the panel to correct several misstatements of the record and to consider what effect these misstatements had on its ruling.

## II.     REQUEST FOR PANEL REHEARING

### A.     The Panel's Refusal to Address All Disputed Convictions

The panel wrote that Ryan's 78-month RICO sentence is "the only sentence he is still serving. All of the others—[including his] 60-month sentences on seven mail fraud convictions . . . — . . . have expired." Slip op. 5. But Ryan's 60-month mail fraud sentences have not expired. He entered prison on November 7, 2007, *see* Dist.Ct.Dkt. 983 (10/26/07),[3] and he will not complete these sentences until November 7, 2012.[4] Because Ryan remains in custody on all

---

[2] *See, e.g.*, *Sun-Diamond Growers v. United States*, 526 U.S. 398, 404 (1999) ("[F]or bribery there must be a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for an official act.") (emphasis in the original).

[3] The docket in *United States v. Ryan*, N.D. Ill. 1:02-cr-0056, is cited as Dist.Ct.Dkt.; the trial transcript is cited as Tr.__; the appendix in this case is cited as A-__; Ryan's opening brief is cited as R.Br.__; the government's brief is cited as G.Br.__; Ryan's reply brief is cited as ReplyBr.__; Ryan's Statement Pursuant to Circuit Rule 54 is cited as R.Rule54stmt.__.

[4] In addition, Ryan was sentenced to a one-year period of supervised release that will begin after the completion of his prison sentences. Supervised release constitutes custody within the meaning of 28

of his mail fraud convictions, he asks the panel to consider the validity of these convictions.

Vacating any of Ryan's convictions would require a redetermination of his sentence, including

his RICO sentence. *See United States v. Smith*, 103 F.3d 531, 533-35 (7th Cir. 1996) (noting that

vacating one or more counts in a § 2255 proceeding "unbundles" the "sentencing package" and

requires a redetermination of sentence).[5]

    The panel declared (Slip op. 6-7):

> Ryan has not argued that the district judge would have given a lower sentence on
> the RICO count had she believed, say, that only four of the mail-fraud
> convictions represented bribes, and the other three represented undisclosed
> conflicts of interest. After all, a district judge may base a sentence on established
> misconduct whether or not that misconduct has led to a conviction.

What matters, however, is not that the district judge might impose the same sentence on remand

that she did initially; what matters is that she might not. After *Skilling*, moreover, failing to

disclose a conflict of interest is not "misconduct."[6]

---

U.S.C. § 2255. *See Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995). With good-time credit,
Ryan probably would have been released from prison and would be serving his term of supervised release
if he had been sentenced only to 60 months. But in fact he continues to serve all of his mail fraud
sentences in prison.

[5] Because vacating any conviction would require resentencing, the concurrent sentence doctrine does not
apply. *See Borre v. United States*, 940 F.2d 215, 223 n.16 (7th Cir. 1991) (a § 2255 proceeding in which
the Court observed, "Our own cases . . . undercut the rationale behind the concurrent sentence doctrine.
We have held that 'the vacation of a concurrent sentence might lead the sentencing judge to reconsider a
sentence not vacated.'"). The concurrent sentence doctrine permits a court to deny review to a concurrent
sentence that has no adverse consequences for the petitioner. Any adverse consequence, however,
precludes application of the doctrine even in a post-conviction proceeding. This adverse consequence
need not itself constitute "custody." *See Steffes v. Pollard*, 663 F.3d 276, 280-81 (7th Cir. 2011).

[6] A unanimous Supreme Court repudiated the "undisclosed conflicts" theory of mail fraud, warning
Congress that any attempt to revive this theory would encounter constitutional problems. 130 S. Ct. at
2933 n.44. For an official to disclose every personal or financial interest that might affect his decisions
would in fact be impossible. The list would include but not be limited to every friend and family member
who might benefit from his actions and every gift or campaign contribution received from a person who
might benefit from these actions. Moreover, even if an official could compile a list of all his conflicts, he
would not know where to post it. How does one disclose a conflict of interest to a disembodied public
employer? The mail fraud theory that *Skilling* repudiated does not merit resurrection as a device for
enhancing the sentences imposed for other mail fraud convictions.

The district court's instructional errors were not harmless with respect to the four convictions the panel did not review. Count 6 concerned a lease of property from Harry Klein four years after Ryan began taking annual vacations at Klein's home in Jamaica. Although the evidence indicated that Ryan concealed Klein's hospitality, both the government's witnesses and its closing argument declared that the motive for this concealment was to avoid revealing a conflict of interest.[7]

Ryan urges the panel to review the government's argument concerning Count 6 in A-000417-18. In this argument, the prosecutor recited the conflict of interest instruction in full, called this instruction the "heart and soul" of the government's case, and proclaimed Ryan had concealed "a classic conflict of interest." The prosecutor never mentioned the bribery instructions. Under the erroneous instructions, the jury plainly could have convicted Ryan for failing to disclose a conflict of interest without considering whether Klein's hospitality was a bribe.

Counts 4, 5, and 7 concerned contracts the state awarded to two lobbying clients of Lawrence Warner, IBM and Viisage. As the district court recognized, no evidence indicated that Ryan "steered" the contracts to these clients. *See* A-000036 ("This charge differs from the others because there is no suggestion that Ryan took any specific 'action' related to the IBM contract— and the standard definition of bribery requires some sort of official action in exchange for the benefits received.")[8] Rather, the court maintained that "material nonpublic information" Warner

---

[7] This conflict arose from Klein's ownership of currency exchanges regulated by Ryan's office.

[8] With the aid of an outside consulting firm (Arthur Andersen), professionals in Ryan's office drafted the RFP that led to the IBM contract. Tr. 4112-43, 12579-81. A committee of nine technical staff members then evaluated the two proposals the office received, with each member ranking the proposals independently on a variety of criteria. IBM's cumulative score was 547 and its competitor's 9. Tr. 12583-88. Ryan and his director of technology ratified the committee's recommendation. The process that led to

had acquired as a member of Ryan's "kitchen cabinet" enabled him to obtain the lobbying contracts.

Officials often have sought advice from people outside government; recall such presidential advisors as Clark Clifford, Abe Fortas, and Vernon Jordan. Warner became an advisor to Ryan long before Ryan became Secretary of State and long before Warner provided the benefits now alleged to be bribes. The jury need not have found that Warner's access to nonpublic information was prompted by Ryan's gratitude for these benefits, let alone that Warner's access resulted from Ryan's agreement to do something in exchange for these benefits. Under the erroneous instructions, the jury might have concluded only that Ryan should have disclosed his relationship with Warner at the time his office approved the IBM and Viisage contracts.

Although the district court recognized that that the acts to which counts 4, 5, and 7 referred would not "support conviction of a bribery offense," A-000036, it said that they were nevertheless parts of a bribery "scheme." But mailings in furtherance of legitimate government contracts are not parts of a bribery scheme.

### B.     Material Misstatements of the Record

The panel wrote, "[W]e conclude that at least two [mail fraud charges] remain valid . . . in the strong sense that the jury *must* have found bribery . . . . We have three principal reasons." Slip op. 8. Each of the panel's reasons rested on a material misstatement of the record.

"First," the panel declared (Slip op. 8):

> Ryan was convicted on four tax counts . . . . Bribes are "income" under the Internal Revenue Code; gifts from friends are not income. The jury was so instructed. . . . By convicting on the tax counts, the jury found that Ryan knowingly accepted

---

a contract with Viisage was similar. *See* Tr. 6798-800. In fact, when Viisage's was the only proposal the RFP initially generated, the office rejected it and required rebidding. Tr. 4990-92.

payment in exchange for official acts—that he was bribed, rather than just that he failed to disclose gifts to the public.

The jury, however, was not so instructed. The only bribes the government alleged were benefits Ryan received from Lawrence Warner and Harry Klein, and the tax counts focused on other payments entirely. Neither the tax-count indictment, A-000138-46, nor the tax-count instructions, Tr. 23922-27, nor the government's argument on the tax-counts, Tr. 22856, 22861, 23104-08, 23112-26, 26866-67, said a word about Warner, Klein, or bribes.[9]

"Second," the panel declared, "both sides argued this case to the jury as one about bribery. . . . [T]he prosecutor did not try to take advantage of the portion of the instructions that *Skilling* later disapproved." Slip op. at 8-9. This statement seriously mischaracterized an argument in which the prosecutor never once described or recited any of the instructions authorizing Ryan's conviction for taking bribes but recited the conflict of interest instruction in full. Standing before a PowerPoint slide reading "It's About Trust," the prosecutor spoke of

---

[9] The panel made the same factual error in its earlier opinion, although it did not suggest then that the tax convictions made the errors of the mail fraud instructions harmless. *See* 645 F.3d at 918. Ryan protested the error. *See* Ryan Pet. for Rehearing, Doc. 45 at 5, *Ryan v. United States*, 7th Cir. No. 10-3964 (7/19/11) ("[N]one [of the benefits now alleged to be bribes] played any part in the tax charges.").

The government did not argue that the tax verdicts made the instructional errors harmless, and the panel did not raise the issue during oral argument. This petition provides Ryan's first opportunity to address the issue, just as it provides his first opportunity to address the concurrent sentence doctrine and the factual question whether he already has completed his mail fraud sentences. *Cf. Wood v. Milyard*, 132 S. Ct. 1826, 1834 (2012) (noting that when an appellate court relies on grounds not mentioned by the parties "the district court's labor is discounted and the appellate court acts not as a court of review but as one of first view").

In a criminal prosecution that alleged both tax fraud and bribery (as opposed to pre-*Skilling* honest services fraud), one would expect the government to allege the defendant's failure to pay taxes on the supposed bribes. In this case, however, the government apparently realized how silly it would sound to argue that Ryan should have paid taxes on Warner's loan to Ryan's brother's business, on Warner's investment in Ryan's son's cigar business, on the political contributions Warner raised by hosting two fundraisers, on Warner's wedding gift to Ryan's daughter, on Warner's sharing of lobbying fees with other lobbyists, or on Warner's failure to charge a fee when he adjusted an insurance claim following the flooding of Ryan's apartment on Christmas day. The government's failure to allege Ryan's nonpayment of taxes on the supposed bribes may itself indicate the weakness of its bribery case.

Ryan's concealment of a "classic conflict of interest." He then declared (A-000417-18):

> That's what this instruction is about, folks. And that is the heart and soul not only
> of the South Holland [Klein] situation, but each and every Warner situation,
> because that flow of benefits that I talked to you about, George Ryan was
> operating under a conflict of interest every time he dealt with Larry Warner,
> because the benefits were flowing from Larry Warner. He had a duty to disclose
> them in many different respects, and he didn't.

The prosecutor coupled every mention of the term "stream of benefits" with the word

"undisclosed."

The prosecutor in fact acknowledged that he had failed to prove the defining element of

bribery, a *quid pro quo*. He said of the government benefits Warner received: "Was it a quid pro

quo? No, it wasn't. Have we proved a quid pro quo? No, [we] haven't. Have we charged a quid

pro quo? No, we haven't. . . . We have charged an undisclosed flow of benefits, which, under the

law, is sufficient." A-000416.

The panel offered this alibi (Slip op. 10):

> [Ryan] misunderstands what the prosecutor meant by "quid pro quo." A dispute
> developed at trial about whether the prosecutor had to show that a particular
> payment from Warner to Ryan matched a particular decision that Ryan made to
> confer benefits on Warner. The prosecutor denied that matching was necessary
> . . . . The district judge told the jury the prosecutor was right about this. Thus
> when the prosecutor denied that it was necessary to show a quid pro quo, he was
> not arguing that it was unnecessary to show bribery; he was arguing that Ryan's
> lawyers had defined bribery too narrowly.

During the conference on jury instructions, however, Ryan's counsel declared, "I

understand . . . [a] one-to-one match-up is not required." Tr. 22081 (quoted in G.Br. 38). On that

point, Ryan and the government were in accord from the beginning. The dispute described by the

panel never happened. When the prosecutor told the jury that a *quid pro quo* was unnecessary,

the jury had no reason to conclude he meant something different from what the Supreme Court

later meant when it declared a *quid pro quo* essential. The prosecutor did not say that a *quid pro

quo* was unnecessary because a bribe can be given for benefits not yet specified. He said that a

*quid pro quo* was unnecessary because "[w]e have charged an undisclosed flow of benefits, which, under the law, is sufficient." A-000416. Incredibly, the panel concluded that the jury "must" have found something that the government expressly acknowledged it had not shown.

"Our third principal reason for finding the error in the jury instruction harmless," the panel said, "comes from analysis of the arguments pro and con about particular counts." Slip op. 10. It then offered a five-page quotation of the district court's analysis of one count. The quoted passage erred at every turn.

It declared, for example, that the jurors "were specifically instructed that if the benefits Ryan received from Warner were merely the proceeds of a friendship, they could not be the basis for a conviction." Slip op. 13. The only instruction that mentioned friendship, however, was one describing an Illinois statute that outlawed gifts from lobbyists. This statute excluded "anything provided on the basis of a personal friendship." A-000421. If Ryan accepted gifts provided on the basis of friendship, the jury could not have grounded its conviction on Ryan's violation of *this statute*.[10] No instruction, however, indicated that gifts provided on the basis of friendship could not create conflicts of interest that Ryan would be obliged to disclose.[11]

The quoted passage also argued that, by rejecting Ryan's claim of good faith, the jury must have found that he did not act for legitimate law enforcement reasons but instead meant "to

---

[10] The jury might have grounded Ryan's conviction on his violation of another statute—one requiring officials to file annual reports of their economic interests, including gifts provided on the basis of friendship. The instructions erroneously directed Ryan's conviction not only for failing to disclose a "personal or financial" conflict of interest but also for violating any of a number of state laws that had nothing to do with bribery. *See* A-000420-21.

[11] This is the fourth time in this Court that Ryan has corrected the district court's erroneous statement that Ryan could not have been convicted if Warner's gifts were motivated by friendship. Ryan made this correction in his opening brief. R.Br. 25. He made it at oral argument after a judge declared that the jury had been told not to convict for gifts made on the basis of friendship. And he made it in his Rule 54 statement. R.Rule54stmt. 18-19 n.21. Ryan also has addressed the other errors of the quoted passage repeatedly, and neither the government nor the panel has questioned any part of his analysis. Perhaps the panel did not mean to endorse all of the district court statements it quoted.

compensate Warner for the stream of benefits he provided[.]" Slip op. 13. In fact, compensating someone for a "stream of benefits" does not constitute bribery; as we show in the next section, there must have been an agreement to provide compensation at the time the benefits were received. Moreover, under the erroneous instructions, the jury might have found that, even if Ryan acted for legitimate law enforcement reasons, he lacked "good faith" because he failed to disclose a conflict of interest.

In fact, a non sequitur pervades the passage quoted by the panel. After declaring that any conflict of interest the jury found must have been "related to" the benefits Warner provided, the passage concluded that the jury must have found Ryan's receipt of these benefits improper. Under the erroneous instructions, however, what was important about these benefits was not that Ryan accepted them improperly but that they created a conflict of interest he did not disclose. Whether the benefits were bribes or legitimate gifts, the instructions erroneously declared that Ryan had a duty to disclose them when he made decisions benefitting their donor.[12]

## III.    REQUEST FOR REHEARING *EN BANC*

As shown in the previous section, the panel decision rested on several misstatements of the record: (1) that Ryan's mail fraud sentences have "expired"; (2) that the tax charges of which Ryan was convicted concerned the payments now alleged to be bribes when they in fact concerned entirely different payments; (3) that, in a case in which the prosecutor called the conflict of interest instruction the heart of his case, he did not rely on conflict of interest

---

[12] Because every bribe creates a conflict of interest but not every conflict of interest is a bribe, it is *always* easier to find a conflict of interest than to find a bribe. For example, even if the jury might have "inferred" that Ryan "implicitly" agreed to do something for Warner in exchange for the check Warner wrote to pay for the band at Ryan's daughter's wedding (or in exchange for this check together with other benefits), the instructions gave it no reason even to address the issue. It would have been simpler to conclude that Ryan failed to reveal a conflict of interest when he awarded a government lease to a close family friend who, among other things, had paid for the band at his daughter's wedding.

instruction; and (4) that instructions mentioning friendship and good faith precluded Ryan's

conviction for failing to disclose legitimate gifts. Even more importantly for purposes of en banc

review, the panel fundamentally misunderstood the law of bribery. Its decision conflicts with

*Skilling* and with the circuit court decisions on which *Skilling* relied.

The passage of the district court's opinion quoted by the panel portrayed the choice

presented to the jury as binary (Slip op. 13):

> [T]he only motivations Ryan had to interfere with this contract were for legitimate
> law-enforcement reasons, as the defense suggested, or to compensate Warner
> for the stream of benefits he provided, as the Government urged. The jury rejected the
> good faith motive. Accordingly, the jury could only have convicted him on this
> count if it believed that his conduct was a response to the stream of benefits . . . .
> The court concludes that the jury must have found Ryan accepted gifts from Warner
> with the intent to influence his actions.

The panel's own description of the issue was similar: Either Ryan took bribes or else he

"accepted undisclosed payments that created a conflict of interest, even though he did not do

anything in exchange." *Id*. at 7.

There were, however, three possibilities, not two: (1) Ryan never considered anything

except the public interest; (2) Ryan accepted benefits with an understanding that he would do

something in return; or (3) although Ryan accepted benefits without any understanding that he

would do anything in return, he was nevertheless influenced by these benefits when he made

governmental decisions helpful to his benefactor. The panel and the district court conflated the

second and third possibilities. They spoke of "compensate[ing] Warner for the stream of

benefits" and "respon[ding] to the stream of benefits" as though these things were the same as

"accept[ing] gifts from Warner with the intent to influence [Ryan's] actions." Only by treating

favoritism for a benefactor and bribery as the same thing was the panel able to conclude that the

jury must have found bribery.

In fact, only the second possibility constitutes bribery. In *Skilling*, after declaring that its

10

standard "draws content . . . from federal statutes proscribing—and defining—similar crimes,"

the Court cited 18 U.S.C. § 201(b) and § 666(a)(2). 130 S. Ct. at 2933. Both of these statutes

prohibit *accepting* a benefit with an improper intent.[13] The Court also cited *United States v.*

*Ganim*, 510 F.3d 134 (2d Cir. 2007), in which Judge Stotomayor wrote for the Second Circuit,

"[R]equiring a jury to find a quid pro quo, as governing law does, ensures that a particular

payment is made in exchange for a *commitment* to perform official acts to benefit the payor in

the future." *Id*. at 147 (emphasis in the original).[14] As the Supreme Court itself explained in

*Evans v. United States*, 504 U.S. 255, 268 (1992), "[T]he offense is complete at the time when

the public official receives a payment in return for his agreement to perform specific official acts

. . . ." *See also McCormick v. United States*, 500 U.S. 257, 283 (1991) (Stevens, J., dissenting)

("When petitioner took the money, he was either guilty or not guilty.").

Under these definitions, it is not bribery for an official to do a favor for someone who has

done a favor for him—not even when the official is prompted by gratitude to his benefactor.

"One hand washes the other" is not bribery; cronyism is not bribery; and streams of benefits

flowing in both directions may not be bribery. The circumstances must warrant an inference that,

at the time an official accepted one or more of the benefits in the stream, he agreed at least

implicitly to do something in return.[15]

---

[13] They also speak of *demanding*, *seeking*, or *agreeing to accept* benefits in return for being influenced. They thus describe conduct that can precede but cannot follow the acceptance of benefits.

[14] *Skilling* cited two other circuit decisions with approval, and they were in accord. *See United States v. Kemp*, 500 F.3d 257, 282 (3d Cir. 2007) (bribery occurs only when "the parties intended for the benefit to be made in exchange for some official action"); *United States v. Whitfield*, 590 F.3d 325, 350 (5th Cir. 2009) ("[A] particular, specified act need not be identified at the time of payment to satisfy the *quid pro quo* requirement, so long as the payor and payee agreed upon a specific *type* of action to be taken in the future.").

[15] A jury sometimes may infer an agreement from streams of benefits flowing in both directions, but it need not draw that inference automatically simply because an official has made decisions helpful to a

The panel's concept of bribery opens the door to prosecution for conduct that even the most incorruptible officials cannot avoid—aiding political supporters and friends. Even a saintly official who focused entirely on the public good could not avoid benefitting friends and supporters sometimes, and few ordinary mortals banish altogether from their thoughts and actions the impulse to aid friends and supporters and to encourage further support. Unfortunate though their favoritism may be, even the best officials are likely to give friends and supporters a leg up.

The panel's concept of bribery places every official at risk and empowers prosecutors to pick their targets. It is also inconsistent with *Skilling* and with the circuit decisions on which *Skilling* relied.

## CONCLUSION

The panel's opinion, which it issued 17 days after argument, relies mainly on an extended quotation from the district court rather than its own analysis. This opinion appears to reflect judicial fatigue and impatience with a troublesome case that will not go away. The panel's misstatement of both the record and the law appear to reflect a determination to bury the case and to defy *Skilling*.

The quoted passage on which the opinion relies purports to describe how the jury must have analyzed a single mail fraud count. Like the rest of the district court's 58-page opinion, this passage envisions a jury engaged in a painstaking dissection of the issues after thoroughly mastering the evidence, the indictment, the instructions, and the arguments. That, however, may not have been what happened during what one member of this Court called "dysfunctional jury

---

benefactor. In this case, the conflict of interest instruction left the jury with no reason even to address the issue.

deliberations." *See United States v. Warner*, 498 F.3d 666, 705 (7th Cir. 2007) (Kanne, J., dissenting).

One reason Ryan's trial was six months long may have been poor case management. *See United States v. Warner*, 506 F.3d 517, 521 (7th Cir. 2007) (Posner, Kanne, & Williams, JJ., dissenting from a denial of rehearing en banc). A more basic reason, however, was the pre-*Skilling* law of honest services fraud. The government alleged a fraudulent scheme that began when Ryan was elected Secretary of State and ended when he left the Governor's office twelve years later. Declaring that the conduct it alleged was "part of the scheme," the government presented months of evidence that had nothing to do with bribes or kickbacks. The jury heard that Ryan violated his announced personal policy of declining gifts worth more than $50, that he awarded low-digit license plates to campaign contributors, that he concealed a consulting fee paid by the Phil Gramm presidential campaign, and more. Ryan argued that the court's admission of this highly prejudicial evidence, none of which would be heard in a post-*Skilling* trial, warranted a new trial. *See* R.Br. 53-57; ReplyBr. 26-30; R.Rule54stmt. 6-12. Although the panel did not address his argument, the flow of irrelevant evidence could not have failed to influence the jury.

Three judges of this Court, dissenting from the Court's denial of rehearing en banc at the time of Ryan's initial appeal, observed:

> [T]he longer the trial, the less likely the jury is to be able to render an intelligent verdict. Jurors become overwhelmed by the volume of evidence and numbed by its repetitiousness. Their attention flags; their minds wander; the witnesses—there were more than a hundred in the trial of the two defendants—get mixed up in the jurors' minds, or forgotten; the profusion of exhibits—there were more than a thousand—makes the documentary record unintelligible.

*Warner*, 506 F.3d at 523 (Posner, Kanne, & Williams, JJ., dissenting).

Both these judges and the two who voted to affirm Ryan's conviction described the jury

13

deliberations that brought the trial to an end. A note to the judge from two jurors complained that others were using derogatory names and shouting profanities. A note from seven jurors accused a juror of refusing to deliberate and asked whether she could be removed. In violation of the court's instructions, a juror brought an article about the removal of jurors into the jury room and read part of it aloud. Jurors allegedly threatened a recalcitrant juror with a charge of bribery.

After eight days, press revelations prompted the judge to halt deliberations and begin an examination of individual jurors.  The examination revealed that half the jurors had provided false answers under oath in their jury questionnaires. Two jurors were removed. The others, although possibly fearful of prosecution for their false answers, remained on the jury. After a five-day hiatus, a reconstituted jury was told to begin deliberations anew. It deliberated for ten days before convicting Ryan.

Even after hearing months of irrelevant, prejudicial evidence and being instructed to convict for failing disclose a conflict of interest, the jury in this case had difficulty reaching a verdict. No one can know what answer it would have given to the question *Skilling* makes critical. The three judges who favored rehearing said of this case, "[H]armlessness is not the test of reversible error when a cascade of errors turns a trial into a travesty." 506 F.3d at 520. Moreover, as Ryan has shown, the instructional errors in this case were not harmless.

The Court should grant Ryan's petition.

Respectfully submitted,

GEORGE H. RYAN SR.


By:   s/ Albert W. Alschuler

DAN K. WEBB
JAMES R. THOMPSON, JR.
MATTHEW R. CARTER
KARL A. LEONARD
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

GENE C. SCHAERR
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
(202) 282-5845

ALBERT W. ALSCHULER
220 Tuttle Road
Cumberland, Maine 04021
(207) 829-3963
a-alschuler@law.northwestern.edu

ANDREA D. LYON
DePaul University College of Law, Legal Clinic
1 E. Jackson Blvd.
Chicago, Illinois 60604
(312) 362-8402
alyon1@depaul.edu

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Karl A. Leonard, certify that this petition complies with the page limit of Fed. R. App. P. 40(b), excluding the parts of the petition exempted by Fed. R. App. P. 35(b)(2) and Fed. R. App. P. 32(a)(7)(B)(iii).

I further certify that this petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as qualified by Circuit Rule 32(b), as the body of the petition has been prepared in a 12-point, proportionally spaced typeface, Times New Roman, and the footnotes have been prepared in an 11-point, proportionally spaced typeface, Times New Roman.

Dated: September 7, 2012          <u>    s/ Karl A. Leonard</u>
                                 Karl A. Leonard
                                 WINSTON & STRAWN LLP
                                 35 West Wacker Drive
                                 Chicago, Illinois 60601
                                 (312) 558-5600

                                 *Counsel for Petitioner-Appellant*

**ADDENDUM**

**Panel Decision**
*George H. Ryan, Sr. v. United States*
**(7th Cir. Aug. 6, 2012)**

In the

# United States Court of Appeals
### For the Seventh Circuit

No. 10-3964

GEORGE H. RYAN SR.,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 5512—**Rebecca R. Pallmeyer**, *Judge.*

On Remand from
the Supreme Court of the United States

ARGUED JULY 20, 2012—DECIDED AUGUST 6, 2012

Before EASTERBROOK, *Chief Judge*, and WOOD and TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. George Ryan, formerly Secretary of State and then Governor of Illinois, was convicted of violating RICO (the Racketeer Influenced and Corrupt Organizations Act), the mail-fraud statute,

the Internal Revenue Code, and a law forbidding lies to federal investigators. His convictions and sentence were affirmed on appeal. *United States v. Warner*, 498 F.3d 666, rehearing en banc denied, 506 F.3d 517 (7th Cir. 2007), cert. denied, 553 U.S. 1064 (2008).

The judge told the jury that it could convict Ryan of mail fraud if he either accepted bribes or concealed receipt of payments that created a conflict of interest. The theory behind the second method of conviction was that the state had an intangible right to Ryan's honest services, and that secret payments interfered with the state's enjoyment of that right even if Ryan did not take the money in exchange for decisions over which he had control on behalf of the state. The instructions were accurate statements of the law under 18 U.S.C. §1341 and §1346, as this court understood the mail-fraud offense at the time. See *United States v. Bloom*, 149 F.3d 649 (7th Cir. 1998). But in *Skilling v. United States*, 130 S. Ct. 2896, 2932–33 (2010), the Supreme Court disagreed with *Bloom*. It held that only bribery or kickbacks can be used to show honest-services fraud. *Id*. at 2931.

Ryan then asked for collateral relief under 28 U.S.C. §2255. He did not contest the lying or tax convictions but did challenge the mail-fraud and RICO convictions. RICO makes it a crime to operate an organization (here, the state of Illinois) through a pattern of predicate crimes. 18 U.S.C. §1962(d). The indictment alleged that mail frauds constituted the predicate crimes; thus a defect in the mail fraud convictions could vitiate the RICO conviction as well. The United States agreed with

No. 10-3964                                          3

Ryan that his petition was timely—waiving any defense under §2255(f)—and did not contend that there is any difference between the sort of review available on a petition under §2255 and the kind available on direct appeal. *Skilling* arose on direct appeal, and the Court remanded with instructions to determine whether the error was harmless. 130 S. Ct. at 2934. See also *Black v. United States*, 130 S. Ct. 2963, 2970 (2010). Ryan asked the district court to engage in harmless-error analysis under §2255 as well. The United States did not disagree with Ryan that a harmless-error inquiry was appropriate, though it stoutly argued that the error was indeed harmless—as the district court held in a thorough opinion. 759 F. Supp. 2d 975 (N.D. Ill. 2010).

At oral argument this court questioned whether the same standard should be used on direct appeal and collateral attack. We directed the parties to file supplemental memoranda concerning that subject. Once again the United States failed to contend that the standards differ. We concluded, however, that the standards are materially different, and that on collateral review the appropriate question is whether the evidence was sufficient to convict under the correct instructions. We held that the record contains more than enough evidence to convict Ryan under the legal standards articulated in *Skilling* and affirmed the district court's decision. 645 F.3d 913 (7th Cir. 2011).

The Supreme Court held Ryan's petition for certiorari until it decided *Wood v. Milyard*, 132 S. Ct. 1826 (2012), which presented questions concerning a court's power,

in a case concerning collateral review of a criminal convic-
tion or sentence, to decide an appeal on a ground that
the prosecutor did not advance. The opinion in *Wood*
articulates several conclusions: (1) that a court of ap-
peals is entitled to deny collateral relief on a procedural
ground that the prosecutor has forfeited by overlooking
it, but not on a ground that the prosecutor has waived;
(2) that the power to decide an appeal on a forfeited
ground should be used only in exceptional cases; and
(3) that a prosecutor's considered decision to refrain
from raising a known procedural issue is waiver. The
Court then remanded Ryan's case with instructions to
reconsider in light of *Wood*. 132 S. Ct. 2099 (2012).
We received position statements from the parties, see
Circuit Rule 54, and the appeal was reargued.

The United States asks us to reinstate our decision
of last year, telling us that, no matter what it said in
the memorandum filed after the first argument, it *now*
agrees with everything we wrote about the difference
between direct appeal and collateral review under §2255.
It maintains that the post-argument memorandum of
2011 forfeited, and did not waive, the legal principles
addressed in our opinion. The gist of the United States'
position in 2012 is that it just didn't realize what a
strong procedural argument it had in 2011 and would
have asserted it vigorously had its lawyers then been
more astute. That does not distinguish our situation
from *Wood*, however; there, too, the state's lawyers
adopted the court of appeals' position after finally
waking up to the strength of the procedural defense.

No. 10-3964    5

The Supreme Court found a waiver in *Wood* because the state knew about a potential defense and told the court that it was not asserting it. That's exactly what happened here. The United States Attorney learned at oral argument that there was a potential procedural argument, then informed the court that the argument was not being asserted. Why a litigant comes to such a decision is irrelevant, and a mistake in reaching a decision to withhold a known defense does not make that decision less a waiver. This court is neither authorized nor inclined to delve into the deliberational process that preceded a decision by the United States Attorney; we must respect the decision announced in court. See, e.g., *In re United States*, 398 F.3d 615 (7th Cir. 2005); *United States v. Zingsheim*, 384 F.3d 867 (7th Cir. 2004). We therefore turn to the harmless-error inquiry, framed as if this were a direct appeal.

This does not mean that we *have* a direct appeal; the real direct appeal was resolved in 2007. Ryan was sentenced to 78 months in prison on one RICO count. This is the only sentence he is still serving. All of the others—60-month sentences on seven mail-fraud convictions, 60-month sentences on three false-statement counts, and 36-month sentences on four tax counts—ran concurrently with each other and with the RICO sentence, and all have expired. Section 2255 allows a person to contest ongoing imprisonment, and it is the single RICO sentence that underlies Ryan's imprisonment today. The jury was told that, to convict Ryan on the RICO charge, it had to find a pattern of criminality including at least two acts of criminal mail fraud. The

jury convicted Ryan on seven mail-fraud counts, so if at least two of these are valid after *Skilling* then the RICO conviction is valid as well.

Ryan's challenge to expired sentences may or may not be moot as a technical matter. A collateral attack begun while custody continues can continue afterward to stave off collateral consequences. See *Spencer v. Kemna*, 523 U.S. 1, 7–14 (1998). Ryan has not identified any collateral consequences of the mail-fraud convictions (such as deprivation of the right to vote or hold office) that would not equally be required by the RICO conviction—not to mention the three false-statement convictions and the four tax convictions, which have not been challenged. Even on direct appeal, courts are free to pretermit decision about convictions producing concurrent sentences, when the extra convictions do not have cumulative effects. As a practical matter, the concurrent-sentence doctrine was abrogated for direct appeal when Congress imposed a special assessment of $50 (now $100) for each separate felony conviction. See *Ray v. United States*, 481 U.S. 736 (1987); 18 U.S.C. §3013(a)(2). A collateral attack under §2241, §2254, or §2255 contests only custody, however, and not fines or special assessments.

An attempt to decide on collateral review whether *each* of the seven mail-fraud convictions was valid would smack of an advisory opinion—something that no waiver, however deliberate, can authorize. Ryan has not argued that the district judge would have given a lower sentence on the RICO count had she believed, say, that

only four of the mail-fraud convictions represented bribes, and the other three represented undisclosed conflicts of interest. After all, a district judge may base a sentence on established misconduct whether or not that misconduct has led to a conviction. We therefore do not think that *Wood* poses an obstacle to confining our attention today to the validity of the RICO count, though we add that, before Ryan's mail-fraud sentences expired, the district judge gave careful consideration to each of the seven and found all of them valid after *Skilling*.

The district judge told the jury that it could find criminal mail fraud (for purposes of both RICO and the seven stand-alone charges) if it found either (a) that Ryan took bribes (private payment for official services rendered, where the payment was designed to influence those official acts) or (b) that Ryan accepted undisclosed payments that created a conflict of interest, even though he did not do anything in exchange. The first possibility survived *Skilling*, and the second did not. Ryan maintains that the jury may have convicted him on (b) alone. Whenever the law changes in this fashion after a jury's verdict, it is difficult to reconstruct what would have happened if the instructions had been different; the judge's and the litigants' understanding of the law at the time is bound to influence how they present and argue a case, as well as how the jury evaluates it. But *Skilling* and *Black* said that harmless-error analysis remains possible, so we must reconstruct as best we can.

Mail-fraud convictions were reaffirmed on remand in both *Skilling* and *Black*. See *United States v. Skilling*,

638 F.3d 480 (5th Cir. 2011); *United States v. Black*, 625 F.3d 386 (7th Cir. 2010). Like the district judge, we conclude that at least two of them remain valid for Ryan too, in the strong sense that the jury *must* have found bribery and not just a failure to disclose a conflict of interest. We have three principal reasons.

First, Ryan was convicted on four tax counts, which involved omitting income from tax returns. Bribes are "income" under the Internal Revenue Code; gifts from friends are not income. The jury was so instructed. The jury also was told that it should acquit Ryan if he believed that the money he received was a gift, rather than a payment for favors delivered in return, even if his belief was wrong. By convicting on the tax counts, the jury found that Ryan knowingly accepted payment in exchange for official acts—that he was bribed, rather than just that he failed to disclose gifts to the public.

Second, both sides argued this case to the jury as one about bribery. The prosecutor produced evidence that Lawrence Warner, Ryan's co-defendant, provided him and his family with extensive benefits. The district judge summarized:

> [T]he benefits flowing from Warner to Ryan included favorable construction and insurance benefits to Ryan's family members; investments in Ryan's son's business; and favorable financial treatment of Comguard, a business involving Ryan's brother. As Ryan himself notes, Warner wrote a $3,185 check to pay for the band that played at Ryan's daughter's wedding and held

> two major fund-raisers for Ryan, raising a total
> of $250,000. The government also provided cir-
> cumstantial evidence that Ryan received cash
> from Warner and others.

759 F. Supp. 2d at 997–98 (citations to the record omitted).
These payments underlay three of the mail-fraud con-
victions (Counts 2, 3, and 8). Ryan's lawyers vigorously
argued that these benefits were tokens of friendship,
and that he did nothing in return for them. If some
of his acts assisted Warner, or Warner's associates, that
happened only because Ryan concluded in the exer-
cise of independent judgment that the public interest
required the actions favorable to Warner. The prosecutor
might have replied that, even if that was true, the jury
still should convict because Ryan did not disclose the
payments. But that's not what the prosecutor argued.
He told the jury that it needed to find that Ryan re-
ceived improper "benefits"—and in context these refer-
ences to "benefits" meant "bribes." In other words, the
prosecutor did not try to take advantage of the portion
of the instructions that *Skilling* later disapproved. Both
prosecution and defense presented this case to the jury
as a dispute about whether Ryan took bribes. The
verdict shows that the jury found in the prosecu-
tion's favor.

   The line of reasoning in the preceding paragraph per-
suaded the district judge—who also conducted the six-
month trial and thus had the best perspective on what
practical issues influenced the verdict—as it also
persuades us. Ryan maintains, however, that the pros-

ecutor did not set this up as a binary choice: find bribery and convict, or find gift (or mistake) and acquit. The prosecutor told the jury that it did not need to find a quid pro quo in order to convict. And that, Ryan maintains, means that the prosecutor was arguing that the jury could convict based on secrecy rather than bribery.

We think that this misunderstands what the prosecutor meant by "quid pro quo." A dispute developed at trial about whether the prosecution had to show that a particular payment from Warner to Ryan matched a particular decision that Ryan made to confer benefits on Warner. The prosecutor denied that matching was necessary and contended that taking money in exchange for a promise (explicit or reasonably implied) to deliver benefits in return is bribery; it isn't necessary to show that Warner's paying for the band at the wedding could be matched against a particular decision Ryan made in exchange. The district judge told the jury that the prosecutor was right about this. Thus when the prosecutor denied that it was necessary to show a quid pro quo, he was not arguing that it was unnecessary to show bribery; he was arguing that Ryan's lawyers had defined bribery too narrowly. This aspect of the prosecutor's argument did not invite a conviction based on nondisclosure, rather than the receipt of bribes.

Our third principal reason for finding the error in the jury instructions harmless comes from analysis of the arguments pro and con about particular counts. What we have said so far is general, but there were detailed submissions to the jury on each mail-fraud count (and

No. 10-3964                                           11

thus on each potential predicate crime under RICO). We agree with the district judge's analysis. Rather than restate it, we reproduce the discussion concerning Count 2, the first of the mail-fraud counts (759 F. Supp. 2d at 998–99; citations omitted):

> Count Two of the indictment charged that the mailing of a check from the State of Illinois to American Detail & Manufacturing Co. ("ADM") was in furtherance of the scheme to defraud. The evidence at trial showed that Ryan intervened on Warner's behalf in order to get James Covert, head of the Secretary of State's vehicle-services division, to withdraw contract specifications that might have caused ADM to lose a valuable vehicle registration stickers contract. At the time, ADM was Warner's client, and prior to Ryan's direct intervention, Warner represented to Covert that he had "authority to speak for Secretary Ryan" and wanted ADM to retain the contract.

> In ruling on the sufficiency of the evidence in support of this count, the court noted that jurors had been instructed that if Ryan had acted in good faith—he claimed that his instructions to Covert were motivated by legitimate law-enforcement concerns—they should not convict him on this count. The jurors convicted Ryan despite this instruction, and the court observed that "Ryan's direct intervention on Warner's behalf, and his attempt to conceal his intervention by directing Covert to withdraw the specifications quietly,

amply support the jury's verdict with respect to Count Two."

Paragraph 3 of the summary indictment describes the Warner transaction, charging that it was part of the scheme that Ryan "performed and authorized official actions to benefit the financial interests of . . . Warner  . . . . The official actions Ryan performed and authorized included: Awarding, and authorizing the award of, contracts and leases, and intervening in governmental processes related thereto and causing contractual payments to be made to benefit the financial interests of defendant Warner." Paragraph 4 describes the receipt of benefits by Ryan, explaining that "[i]t was further part of the scheme that defendant Ryan and certain third parties affiliated with Ryan received personal and financial benefits from defendant Warner . . . while defendant Ryan knew that such benefits were provided with intent to influence and reward Ryan in the performance of official acts."

In order to convict Ryan on Count Two, the jurors had to believe one of three theories: either (1) Ryan concealed a conflict-of-interest related to the ADM contract; (2) Ryan misused his office for private gain in discussing the contract with Covert; or (3) Ryan accepted benefits (bribes) from Warner in exchange for his intervention. The first theory does not stand on its own. The only conflict of interest presented to the jury relating

to ADM was Ryan's relationship with Warner
and Warner's involvement in this contract. There-
fore, if the jury found that Ryan concealed a con-
flict of interest (theory (1)), it necessarily had to
find that he had misused his office for private
gain (theory (2)), or that he had accepted benefits
from Warner in exchange for favors relating to
ADM (theory (3)). The misuse of office theory
(2) might stand alone if the jury believed that
Ryan decided for some illegitimate reason—
unrelated to the benefits Warner provided to
Ryan—to coerce Covert into withdrawing the
specifications. But the only motivations Ryan
had to interfere with this contract were for legiti-
mate law-enforcement reasons, as the defense
suggested, or to compensate Warner for the
stream of benefits he provided, as the Govern-
ment urged. The jury rejected the good faith mo-
tive. Accordingly, the jury could only have con-
victed him on this count if it believed that his
conduct was a response to the stream of benefits.
Ryan suggests that the only "private gain" he
received for his intervention in this transaction
was the approval of his friend. As explained
earlier, however, the jurors must have rejected
this argument; they were specifically instructed
that if the benefits Ryan received from Warner
were merely the proceeds of a friendship, they
could not be the basis for a conviction. The court
concludes that the jury must have found Ryan
accepted gifts from Warner with the intent to
influence his actions.

The Government did present the awarding of contracts and leases in these terms. In closing, the Government urged:

> George Ryan, as a public official, had a duty to provide honest services to the people of the state of Illinois who had elected him. And the evidence in this case has shown that he repeatedly violated that duty. He violated that duty by giving state benefits, like contracts and leases, to his friends—Warner, Swanson, Klein—while at the same time they were providing various undisclosed financial benefits to him and his family and to his friends. The benefits included free vacations, loans, gifts, campaign contributions, as well as lobbying money that Ryan assigned or directed to his buddies. In short, Ryan sold his office. He might as well have put up a 'for sale' sign on the office.

Further, the Government presented a valid "stream of benefits," "retainer," or "course of conduct" bribery theory when it explained that

> this is not a case in which a public official had a specific price for each official act that he did, like a menu in a restaurant where you pick an item and it has a particular price. The type of corruption here—that type of corruption where you give me this, I will give you that, is often referred to as a *quid pro quo*. The corruption here was more like a meal plan

> in which you don't pay for each item on the
> menu. Rather, there is a cost that you pay, an
> ongoing cost, and you get your meals. And
> for Warner, Swanson, and Klein it was not a
> cash bar. This was an open bar during Ryan's
> terms as secretary of state and as governor.

> While Ryan is correct that the Government also
> suggested Ryan could be convicted based on a
> conflict of interest, as explained earlier, that was
> not a tenable independent theory that would
> have supported conviction of Ryan on Count Two.

The district court went on to conclude that the other two
mail-fraud counts related to Warner (Counts 3 and 8) must
be analyzed identically. 759 F. Supp. 2d at 1000. And with
this we reach three, more than enough to sustain the
RICO conviction and sentence.

The district judge conducted a similar analysis for
each of the remaining mail-fraud counts, *id*. at 1000–04,
and the application of the mail-fraud theories to
finding predicate offenses under RICO, *id.* at 1004. Rep-
etition in this opinion is unnecessary. We don't con-
sider these other four counts, but readers should not
infer that we disagree with any part of the district
court's analysis. We just think it unnecessary, given
that the sentences for all seven mail-fraud convictions
have expired.

Our opinion last year held, 645 F.3d at 918–19, that the
evidence is sufficient to support a finding of mail fraud,
on all counts, under *Skilling*. The Supreme Court did not
instruct us to reconsider that portion of our decision.

16                                    No. 10-3964

The district court's order denying Ryan's motion for
relief under §2255 therefore is

                                              AFFIRMED.

## <u>CERTIFICATE OF SERVICE</u>

      I, Karl A. Leonard, an attorney, hereby certify that I have this day filed the foregoing via CM/ECF with the Clerk of the Court, thereby electronically serving it on the following:

*Counsel of Record for the United States of America*

Marc Krickbaum
Office of the United States Attorney
Northern District of Illinois
5th Floor
219 South Dearborn Street
Chicago, Illinois 60604

Dated:  September 7, 2012                                        s/ Karl A. Leonard
                                                        Karl A. Leonard
                                                        WINSTON & STRAWN LLP
                                                        35 West Wacker Drive
                                                        Chicago, Illinois  60601
                                                        (312) 558-5600

                                                        *Counsel for Petitioner-Appellant*